IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:11-cr-00253 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| | ) | |
| RICKY L. MYLES | ) | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant's *pro se* "Emergency COVID-19 Filing Emergency Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)" (Doc. No. 31), and a Supplemental Motion (Doc. No. 32), filed by counsel for Defendant. The case was reassigned to the undersigned Judge on June 23, 2020. The Government filed a Response (Doc. No. 36) on July 6, 2020, and Defendant filed a Reply (Doc. No. 43) on July 26, 2020.

### I. Factual and Procedural Background

On May 29, 2012, Defendant pled guilty, before now-retired Judge Todd J. Campbell, to drug trafficking. (Doc. Nos. 20, 21). Through the Plea Agreement, the parties agreed to a sentence of 151 months of imprisonment, and the Government agreed to dismiss a second charge of unlawful possession of a firearm by a convicted felon. (*Id.*) At the subsequent sentencing hearing, Judge [Todd] Campbell imposed the agreed 151-month sentence, to be followed by three years of supervised release. (Doc. Nos. 28, 29, 30).

The United States is in a public health crisis due to COVID-19, the infectious disease caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2). *See* World Health Org., *Naming the Coronavirus Disease (COVID-19) and the Virus That Causes It*, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technicalguidance/naming-

the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it (last visited July 27, 2020); U.S. Department of Health & Human Servs., *Renewal of Determination that a Public Health Emergency Exists*, https://www.phe.gov/emergency/news/healthactions/phe/Pages/covid19-23June2020.aspx (last visited July 27, 2020) (renewing, effective July 25, 2020, determination that a nationwide public health emergency exists due to the COVID-19 pandemic and has existed since January 27, 2020). COVID-19 has now killed more than 148,000 Americans and infected more than 4.2 million in a few months. *Mortality Analysis*, Johns Hopkins U. & Med. (July 28, 2020, 1:16 p.m.), https://coronavirus.jhu.edu/data/mortality.

The Centers for Disease Control and Prevention ("CDC") advises that individuals with certain underlying health conditions and older adults are at increased risk for severe illness and death if they contract the virus. *See* CDC, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased risk.html (last visited July 27, 2020). "At this time, there is no known cure, no effective treatment, and no vaccine." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring). According to the CDC, "[t]he best way to prevent illness is to avoid being exposed to the virus." *See How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. (last visited July 27, 2020).

## II. Standard of Review

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under § 3582(c)(1)(A) to allow prisoners to directly petition courts. Accordingly, the compassionate release statute now states in relevant part:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>  (i) extraordinary and compelling reasons warrant such a reduction…

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement pertaining to reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is set forth in Section 1B1.13 of the United States Sentencing Guidelines Manual, and provides that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>>
>> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. In the Application Notes to Section 1B1.13, the Sentencing Commission describes circumstances that could be considered extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), including the criteria to be applied and a list of specific examples. *See* U.S.S.G. § 1B1.13 cmt. n. 1. However, the Sentencing Commission has

3

Case 3:11-cr-00253   Document 46   Filed 07/29/20   Page 3 of 10 PageID #: 289

defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>  (i) extraordinary and compelling reasons warrant such a reduction…

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement pertaining to reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is set forth in Section 1B1.13 of the United States Sentencing Guidelines Manual, and provides that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>>
>> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. In the Application Notes to Section 1B1.13, the Sentencing Commission describes circumstances that could be considered extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), including the criteria to be applied and a list of specific examples. *See* U.S.S.G. § 1B1.13 cmt. n. 1. However, the Sentencing Commission has

not amended or updated Section 1B1.13 or the Applications Notes since the First Step Act was enacted. Therefore, although Section 1B1.13 and the Application Notes provide helpful guidance, district courts are not bound by those sources in determining what constitutes "extraordinary and compelling reasons" for compassionate release under Section 3852(c)(1)(A). *See United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *3-6 (M.D. Tenn. Mar. 4, 2020).

### III. Analysis

As an initial matter, the Court notes that there is no dispute Defendant has exhausted administrative remedies in this case. (Doc. No. 31, at 8-9; Doc. No. 32, at 6; Doc. No. 36, at 6). Defendant submitted a request to the warden, on April 12, 2020, for relief under the CARES Act due to COVID-19 and his underlying health conditions. (*Id.*) His request was denied the next day. (*Id.*)

Through his filings, Defendant states that he is 59 years old and is currently housed at FMC Butner. He has served approximately 103 months of his 151-month sentence, and his projected release date is December 29, 2023. Defendant's medical records (Doc. No. 39) and the declaration of Dr. Paul Bryant, who has reviewed those records, indicate that Defendant suffers from diabetes mellitus (complicated by nerve damage), obesity, moderate chronic kidney disease, hypertension, and severe sleep apnea. (Doc. No. 43-1).[1] According to Dr. Bryant, "Mr. Myles falls into the HIGHEST RISK category for developing severe disease were he to be infected with SARS-CoV-2." (*Id.,* at 2).[2] In its most recent guidance, the CDC indicates individuals with chronic kidney

---

[1] Defendant's Presentence Investigation Report indicates that he suffered from Type II diabetes, hypertension, and an abdominal hernia at the time he was sentenced in 2012. (Doc. No. 39-2 ¶ 62).

[2] Considering diabetes alone as a risk factor, Dr. Bryant points out that epidemiological studies following the outbreak of COVID-19 have shown that diabetes is one of the "'leading comorbidities associated with infection severity'" and that infectious diseases substantially reduce the life expectancy of individuals with diabetes. (Doc. No. 43-1, at 2). "If Mr. Myles were to require mechanical ventilation and prolonged ICU level care as a result of COVID-19, this would increase the likelihood of developing a secondary hospital

disease, obesity, or Type 2 diabetes mellitus are at an increased risk for severe illness from COVID-19. *See* Centers for Disease Control and Prevention, *Coonavirus Disease 2019 (COVID-19) People with Certain Medical Conditions* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 28, 2020).

According to Defendant, as of June 4, 2020, FMC Butner, where he is housed, had four inmates and two staff members test positive for the virus, and one inmate and eight staff members recover from the virus. (Doc. No. 32, at 5). When all Butner facilities are considered together, Defendant states, there are an additional 300 inmates who have tested positive, and 15 inmates who have died as a result of the virus. (*Id.*) The Bureau of Prisons' website reveals that those numbers have increased since Defendant's filing. *See* Bureau of Prisons, *COVID-19 Coronavirus* https://www.bop.gov/coronavirus (last visited July 28, 2020). The parties have not submitted any evidence regarding the relationship among the Butner facilities, but Defendant claims that staffing is shared among the facilities. (Doc. No. 31, at 2). Defendant points out that social distancing is difficult if not impossible in a prison setting, and the conditions at Butner put him in great danger. *See* Center for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Mar. 23, 2020), available at *https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf* Defendant contends that the greater risk of contracting the virus at Butner, along with the underlying health conditions that place him at a higher risk of developing serious complications if he contracts the virus, constitute "extraordinary and compelling reasons" for the Court to grant compassionate release.

---

acquired bacterial infection independent of his initial viral infection," which would "likely complicate weaning the patient off ventilatory support, further prolonging his hospitalization and increasing his risk of significant morbidity." (*Id.*)

The Government argues Defendant has not shown "extraordinary and compelling reasons." First, the Government argues the facility where Defendant is housed has had very few COVID cases. In addition, the Government contends that, although Defendant's diabetes and obesity may increase Defendant's risk of severe illness should he contract COVID-19, which may qualify as "extraordinary and compelling reasons," Defendant's medical records indicate "BOP is successfully managing those conditions despite defendant's non-compliance as a patient." (Doc. No. 36, at 2).

In the Court's opinion, Defendant has demonstrated "extraordinary and compelling reasons" warranting consideration of compassionate release. The medical evidence in the record, including the opinion of Dr. Bryant, indicates Defendant has underlying medical conditions placing him at an increased risk of developing severe complications should he contract the virus. Indeed, the Government has conceded as much in other cases where the defendant has diabetes. *See United States v. Charles Jeffrey Edwards,* M.D. Tenn., Case No. 3:12-cr-00012-1 (Doc. No. 502, at 13 (June 2, 2020)) (discussing "DOJ's apparent new nationwide policy" of conceding that any inmate who suffers from diabetes or another chronic condition associated with severe illness from COVID-19 are eligible for compassionate release). In addition, the Government has not filed any evidence supporting its sanguine view of Defendant's underlying medical conditions, nor has it filed medical testimony responding to Dr. Bryant's opinion.[3]

Having determined Defendant has presented extraordinary and compelling reasons for compassionate release, the Court still must consider the Section 3553(a)[4] factors to determine if a

---

[3] For example, according to Dr. Bryant, the BOP medical records' classification of Defendant's diabetes as "asymptomatic," a notation cited by the Government, is "medically irrelevant, in terms of stratifying his risk for severe complications from uncontrolled disease." (*Id.*)

[4] The factors set forth in Section 3553(a) include:

sentence of "time-served" – in this case, approximately 103 years of a 151-year sentence – is one that is "sufficient, but not greater than necessary" to comply with those factors. 18 U.S.C. § 3553(a).

The Government argues Defendant has not made such a showing because he had a substantial criminal history and was a Career Offender when he was sentenced. The Government contends a sentence reduction would risk creating unwarranted sentencing disparities among similar defendants. Citing to Defendant's brief, the Government also states Defendant has been disciplined while incarcerated for "repeated unexcused absences from school, unauthorized possession of medical items, and for making sexual derogatory statements to a female worker." (Doc. No. 36, at 9).

Defendant contends the Section 3553(a) factors weigh in favor of release, given his age, medical conditions, and the length of time he has already served. Defendant proposes living with his sister, upon release, and serving a period of home detention. The Probation Office has conducted a home assessment relating to Defendant's proposal, and has recommended a 6-month

---

- the nature and circumstances of the offense and the history and characteristics of the defendant;

- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

- the applicable Sentencing Guideline range;

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

- the need to provide restitution to any victims of the offense.

period of home detention and a 14-day self-quarantine should the Court decide to grant compassionate release. (Doc. No. 45).

Applying the Section 3553(a) factors here, the Court starts with the nature and circumstances of the offense. Defendant was arrested after a "controlled buy" involving .39 grams of crack cocaine. (Doc. No. 21 ¶ 8). Another .72 grams was discovered in his pocket. (*Id.*) Later that day, police seized a .45 caliber handgun from the vehicle Defendant shared with his wife. (*Id.*) For purposes of sentencing, Defendant was held responsible for 1.11 grams of crack cocaine, and received an increase in his offense level for possession of the handgun. (Doc. No. 39-2 ¶¶ 14-15). While drug trafficking is a serious crime, the particular conduct at issue would have resulted in a sentencing guideline range of 27 to 33 months had Defendant not qualified as a Career Offender. (*Id.* ¶¶ 12-22). By qualifying as a Career Offender, Defendant's sentencing range went from 27-33 months (Offense Level 11 and Criminal History Category VI) to 151 to 188 months (Offense Level 29 and Criminal History Category VI).

As for the history and characteristics of the defendant, the Government is correct that Defendant did indeed have a lengthy criminal record when he was sentenced in 2012. (Doc. No. 39-2, ¶¶ 24-45). Upon closer examination, however, the Court notes that of Defendant's 19 convictions, 16 occurred more than 10 years before he was sentenced in 2012. Of the three convictions occurring after 2001, two were for possession of less than .5 grams of crack cocaine for resale, and one was for driving under the influence. In the Court's opinion, the age of the convictions, almost half of which were for drug trafficking, and Defendant's age when they occurred (more than half when Defendant was in his teens and 20s), mitigate their weight in determining the appropriate sentence.

8
Case 3:11-cr-00253   Document 46   Filed 07/29/20   Page 8 of 10 PageID #: 294

The Court also notes that Defendant's early participation in drug dealing and other criminal activity may be partially explained by the circumstances of his childhood. The Presentence Investigation Report indicates Defendant grew up in public housing without a father-figure. (*Id.* ¶ 59). According to Defendant, he was "raised by the streets" and began using drugs and skipping school as a young teenager. (*Id.*) Defendant began consuming alcohol and controlled substances at age 14 or 15. (*Id.* ¶ 64).

As for his disciplinary record, the Probation Office indicates that, during 103 months of incarceration, Defendant has been disciplined for: "being absent from his assignment in 2016, possessing an unauthorized item in 2016, and making sexual threats/proposal in 2015." (Doc. No. 45). On the other hand, Defendant has participated in a number of classes and programs during incarceration, including diabetes education, Financial Peace University classes, GED classes, and a drug education program. (*Id.*) Defendant has also worked as a unit orderly and as a cook. (*Id.*)

The Court is persuaded that these factors, as well as the remaining Section 3553 factors, weigh in favor of a "time-served" sentence of approximately 103 months. A 103-month sentence is sufficient to reflect the seriousness of the offense, promote respect for the law, afford just punishment, afford adequate deterrence, and prevent unwarranted sentencing disparities. The Government has not identified any specific conduct suggesting Defendant poses a risk to the public upon release. Defendant is 59-years old, requires medical treatment for various serious medical conditions, and will be subject to the restrictions of supervised release for three years after he is released. In addition, as explained below, Defendant will be on home confinement for the first six months of supervision.

For the reasons set forth herein, Defendant's *pro se* "Emergency COVID-19 Filing Emergency Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)" (Doc. No.

31), and Supplemental Motion (Doc. No. 32) are **GRANTED.** Accordingly, Defendant's term of imprisonment is reduced to time served.

Defendant is subject to the conditions of supervised release imposed in the Judgment (Doc. No. 29), with the following additional conditions:

(1) Defendant shall self-quarantine for 14 days upon arrival at his residence, given the current COVID-19 pandemic; and

(2) Defendant shall be on home detention for six months of supervision beginning as soon as practicable from time of release from custody/placement on supervision. While on home detention, the defendant is required to remain at his residence at all times except for approved absences for gainful employment, community service, religious services, medical care, education or training programs, and such other times as may be specifically authorized by the U.S. Probation Office. As to the technology utilized, the Court gives the U.S. Probation Office the discretion to implement a particular technology to address risk. Defendant shall pay all or part of the cost of any monitoring system if the U.S. Probation Office determines the defendant has the financial ability to do so.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE